## Schmeltz *v.* American Casualty Company, Appellant.

Argued November 10, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-MAN, JJ. (FLOOD, J., absent).

*Richard D. Klaber,* with him *Dickie, McCamey & Chilcote,* for appellant.

*John R. Luke,* for appellee.

OPINION BY WATKINS, J., December 16, 1965:

This is an appeal from a judgment entered on a jury verdict in the Court of Common Pleas of Allegheny County in favor of the plaintiff-appellee, John Edward Schmeltz, Sr., administrator of the Estate of John Edward Schmeltz, Jr., and against American Casualty Company, of Reading, Pennsylvania, the defendant-appellant; and from the denial by the court below of a motion for judgment n.o.v.

The testimony must be viewed in the light most favorable to the verdict winner, with every reasonable inference arising therefrom. *Coventry v. Keith,* 175 Pa. Superior Ct. 504, 106 A. 2d 658 (1954). So viewed the facts are as follows: During the summer of 1959 John Schmeltz, Jr. and his younger brother James made arrangements to attend Camp Fairfield, a United Presbyterian Church camp in western Pennsylvania. Each boy was required to take a physical examination and must have the approval of the family physician before being accepted for the camp.

According to his family physician John Edward Schmeltz, Jr. had some respiratory trouble and had his tonsils removed in April of 1959. Afterward he gave every evidence of good health, and according to an examination by his family doctor on April 10, 1959, including a heart examination, he was in good health at that time. He took the physical examination required by the camp on Saturday, July 3, 1959, and was found to be in good health.

On July 4, 1959, the appellee took his two sons to the camp and upon their arrival they were registered and each assigned to separate groups and quarters for their stay at the camp. The appellee informed the camp director that his son was not a good swimmer.

About one half hour after registration James saw his brother changing into a bathing suit to go swimming. James went for a walk with other boys. One half hour later he saw his brother lying near the pool, his suit and body were wet, and the lifeguard and a nurse were giving him mouth to mouth resuscitation.

The local fire company was called and attempted to use a resuscitator but it failed to function. Dr. Walter D. Shutter arrived shortly thereafter and saw the difficulty and performed a tracheotomy on the boy and found bits of undigested food in the boy's bronchial

tube. Every attempt failed and the boy was pronounced dead.

All registrants at the camp were covered by the group life insurance policy of the appellant. Liability was denied on the ground that death was a result of a heart attack and not an accidental drowning.

The evidence presented in this case left much to be desired. Despite the number of people present there was no direct evidence. The appellee relies solely on circumstantial evidence. The burden is on the plaintiff of proving an accident or to present facts or circumstances from which the jury could infer legitimately to the exclusion of other inferences, equally plausible, that the insured's death resulted from the accident. *De Reeder v. Travelers Insurance Company*, 329 Pa. 328, 198 A. 45 (1938).

The question is not whether the circumstances exclude every other hypothesis, but whether they fairly support the theory advanced by the plaintiff and exclude by their preponderating weight the theory advanced by the defendant. *Brenneman v. St. Paul F. & M. Ins. Co.*, 411 Pa. 409, 192 A. 2d 745 (1963). In this case the Supreme Court reversed a judgment n.o.v. granted by the court below, and held that in a life insurance policy, insuring against loss of life resulting directly and independently of all other causes, from accidental bodily injury, the plaintiff must prove only a bona fide accident and that violence resulting therefrom caused death. It held that the burden shifts to the defendant to show that, without a pre-existing illness, death would not have occurred. Where there is some evidence tending to show that death resulted from an accident rather than from natural causes, a prima facie case is made out and the requirement of affirmative proof of an accident is satisfied. See: 26 U. of Pitt. L. Rev. (1964), page 269.

The plaintiff did show that on April 10, 1959, the boy was in good health, as testified to by his family physician, Dr. William H. Kunkel, that he was examined by Dr. Clyde Krug on July 3, 1959, in accordance with the camp rules and although Dr. Krug was not called as a witness, it is a justifiable inference that the boy passed the physical examination in order to be accepted by the camp; and so was in good health the day before the accident; that the boy was in excellent health according to his father and brother; that the pool was overcrowded; that there were no bruises or marks found on his body; that he was seen putting on his bathing suit to go swimming; that the camp had been advised that he did not swim well; and that he was next seen lying on the ground in his bathing suit, dripping wet, with a lifeguard and a nurse working over him, applying artificial respiration by mouth to mouth resuscitation.

The evidence in this case, although circumstantial, fairly supports the theory of an accident by drowning and excludes by its preponderating weight the theory of a heart attack in this case. The jury could and did resolve it.

Judgment affirmed.